101 N.J. Super. 455 (1968)
244 A.2d 542
MARGARET SILAGY, PETITIONER-APPELLANT,
v.
STATE OF NEW JERSEY AND COUNTY OF MERCER, RESPONDENTS-RESPONDENTS.
Superior Court of New Jersey, Mercer County Court  Law Division.
Decided May 15, 1968.
*456 Mr. Charles J. Casale, Jr. for petitioner-appellant (Messrs. Pellettieri and Rabstein, attorneys).
Mr. Charles I. Levine, Deputy Attorney General, for respondent State of New Jersey (Mr. Arthur J. Sills, Attorney General of New Jersey, attorney).
*457 Mr. Philip A. Levy, for respondent County of Mercer (Messrs. Levy, Levy, Albert and Marcus, attorneys).
SALVATORE, J.C.C.
This action arises out of an appeal from a judgment in the Division of Workmen's Compensation denying petitioner's claim for relief. The essential facts which form the basis of petitioner's claim for relief are not in dispute since all the parties to this action entered into a stipulation at a hearing before Judge of Compensation Skeffington and that stipulation is adopted for the purposes of this appeal. The stipulation is as follows:
"It can be stipulated that on June 29, 1966, Margaret Silagy was and had been in the employ of the State of New Jersey earning a weekly wage of $64.27; that on that day she was engaged in jury service for the County of Mercer at the Mercer County Court House and she sustained injuries by reason of an accident arising out of and during the course of her jury service; she received for her service the regular and statutory jury fee; that everybody has disclaimed liability in the case; and that there are presently due the following bills which have not been paid; The Trenton Orthopedic Group, $80; St. Francis Hospital for X-rays, $84.65; and the petitioner is entitled to reimbursement in the amount of $3.75 for an elastic stocking prescribed by Dr. Thurm, the treating physician. She was also out of work for a period of four weeks during which she was paid her full wages by the State of New Jersey. I think it can also be stipulated that during jury service the State of New Jersey paid her her full wages."
In an order dated November 20, 1967 the petition against the State of New Jersey was dismissed, Judge Skeffington ruling that the injury suffered by petitioner did not result from an accident arising out of and in the course of her employment with the State of New Jersey. The petition against the County of Mercer was similarly dismissed in an order dated November 28, 1967, upon Judge Skeffington's determination that "petitioner while serving on jury duty was not an employee of the County of Mercer", as required by the Workmen's Compensation Act. This appeal follows the entry of the above orders.
*458 Petitioner's normal or usual employment by the State of New Jersey was as a clerk in the Department of Labor and Industry. Upon receiving notice to appear for jury duty on June 20, 1966 at the Mercer County Court House in Trenton, she was permitted to attend to this duty at the expense of the State. It was understood that when petitioner was not needed for jury duty she would appear for her usual employment. On June 29, 1966, she served jury duty and, upon leaving the Mercer County Court House that day, tripped over a rubber mat, resulting in serious injuries to her right foot and ankle.
There is no factual dispute between the parties, hence the issues presented for consideration by this court are as follows:
1. Whether an employee of the State of New Jersey, who is maintained on full salary but serves as a juror for a stipulated period of time, remains an employee of the State during the course of that jury duty and is entitled to receive workmen's compensation benefits from the State for injuries suffered while on said jury duty; and
2. Whether the petitioner was an employee of the County of Mercer because she was summoned for jury duty and performed a particular function for the county; was paid by the county for said jury services; and was at all times subject to the control and direction of the county during the course of her jury duty.
The legal questions raised by this appeal are novel to the State of New Jersey. Neither the court nor counsel for the respective parties were able to find reported decisions of this State discussing the issue of whether, for purposes of workmen's compensation, a juror is an "employee" of the county which summons him for jury duty. There are reported decisions from other states which indicate two views and which will be discussed at length later in this opinion.
The court will first consider the question of whether the petitioner was an employee of the State of New Jersey while serving as a juror.

*459 I
It is the position of respondent State of New Jersey that for a state employee to receive workmen's compensation benefits, she must come within the scope of N.J.S.A. 34:15-43 relating to "public employee[s] within workmen's compensation law * * *." It is further contended that in order to do this, petitioner must have been an employee of the State of New Jersey at the time of her accident and the injury must be work-related; it must have arisen out of and in the course of her employment R.S. 34:15-7.
Petitioner contends that while she was engaged as a member of the jury panel at the Mercer County Court House, the State of New Jersey paid her full salary in conformity with its employment policy. It is alleged these payments clearly arose from the employer-employee relationship; therefore the sole issue as to this portion of the appeal is whether the petitioner was injured in an accident arising out of and in the course of her employment with the State.
Payment of wages may be one of the elements of proof in determining whether the relationship of employer-employee exists at a particular moment, but it is not a controlling factor. The court will also consider the factors of hiring, control and power of dismissal, with control being the single most important factor. Runk v. Rickenbacher Transportation Co., 31 N.J. Super. 350, 354 (App. Div. 1954). Control is defined as supervisory power not only over what shall be done  the desired end result, but also over how it shall be done  the means of accomplishing that end result. Marcus v. Eastern Agricultural Ass'n. Inc., 58 N.J. Super. 584, 596 (App. Div. 1959), reversed 32 N.J. 460 (1960). See, e.g., Wilson v. Kelleher Motor Freight Lines, Inc., 12 N.J. 261, 264 (1953); DeMonaco v. Renton, 18 N.J. 352, 355 (1955); Cappadonna v. Passaic Motors, Inc. 136 N.J.L. 299, 300 (Sup. Ct. 1947), affirmed per curiam 137 N.J.L. 661 (E. & A. 1948). However, there are various situations in which the control test is not the dispositive factor *460 in establishing an employer-employee relationship. They necessarily require a consideration of the circumstances surrounding the particular facts of each case. E.g., DeMonaco v. Renton, supra, 18 N.J., at p. 357.
In the present case, the State neither controls what shall be done while petitioner is on jury duty nor how her duties are to be performed. As the usual employer, the State cannot and does not control the hiring of the juror, the discharge of the juror, the final vote of the juror, the place where she is to vote, the hours she is to serve, nor the compensation to be paid for her service. In short, the State does not exercise, to any significant degree, such control over petitioner while she is serving as a juror as would determine the existence of an employer-employee relationship.
Petitioner contends that an employment relationship may be concluded from the State of New Jersey's practice of continuing payment of normal wages during the period of jury duty: from the fact that she was conferring a benefit to her employer, the State; and moreover says it is not necessary that the employee's injuries be incurred while in the course of her usual employment.
In support of this position petitioner relies upon the case of Healy v. Pennsylvania R. Co., 184 F.2d 209 (3 Cir. 1950). In that case a railroad employee was killed while crossing tracks to attend a rally to find out why he had not received a war bond for which he had subscribed. The court found that defendant, the decedent's employer, had induced its employees to attend a bond rally by paying them a regular salary during their attendance. The question arose on appeal whether decedent was engaged in interstate employment when killed, so as to permit recovery under the Federal Employer's Liability Act, 45 U.S.C.A., § 51. The court pointed out the employer had by various acts widened the scope of decedent's employment to include the purchase of bonds at a rally, including the payment of normal salary during his attendance. The court said, that "defendant itself had enlarged the ambit of the employment by its patriotic *461 efforts to assist the United States to sell bonds to its employees." (at p. 212)
Petitioner contends Healy is analogous to the instant case in that the State of New Jersey was seeking to aid its judicial department to obtain the attendance of qualified jurors who might otherwise seek to be excused because of financial hardship. This court does not agree with petitioner's conclusions. In Healy the foreman was acting under the direction of one of the company's supervisors as to the time and place of the war bond rally to be conducted by the supervisor, in addition to other factors. In the instant case, petitioner was performing a civic duty which each individual owes his community. The Queen v. Lui Self, 8 Haw. 434 (1892); Jochen v. County of Saginaw, 363 Mich. 648, 110 N.W.2d 780 (Sup. Ct. 1961). While petitioner was serving as a juror there was no control being exercised over her by the State, and continued payment of wages was a matter of policy with her usual employer. Indeed, there is no statutory requirement that an employer must continue to pay a juror her normal wages while serving jury duty. It is entirely discretionary with the usual employer. Fortunately, many employers throughout the State realize the important civic duty being rendered the community and in their wisdom choose to compensate employees selected for jury duty, to help alleviate what would otherwise be a tremendous financial hardship to many jurors.
Respondent State of New Jersey contends, as hereinbefore mentioned, that the petitioner must come within the scope of N.J.S.A. 34:15-43 in order for it to be held responsible in workmen's compensation, and further, that the injury must be work-related and have arisen out of and in the course of her employment with the State. A reading of N.J.S.A. 34:15-43 reveals that the Legislature remained silent with respect to the question of whether a juror is a "public employee," so as to create an employer-employee relationship and thus afford workmen's compensation coverage. The Legislature extended the benefits of the Workmen's *462 Compensation Act to include "volunteer firemen" and "rescue squad workers" injured in the "line of duty." In the absence of an express legislative intent to include among those entitled to workmen's compensation jurors who may be injured while serving  and nothing has been produced to indicate that such coverage was intended  this court must sustain the argument that no employer-employee relationship existed between the State of New Jersey and petitioner while she was serving on jury duty. In addition, if it be assumed arguendo that there existed an employer-employee relationship, notwithstanding the fact petitioner was injured while on jury duty, there must be a showing that the injury sustained was work-related in order to comply with the second requirement of N.J.S.A. 34:15-43. This court cannot agree that petitioner has satisfied this requirement. See Gargano v. Essex County News Co., 129 N.J.L. 369 (1943), affirmed 130 N.J.L. 559 (E. & A. 1943); Crotty v. Driver Harris Co., 49 N.J. Super. 60 (App. Div. 1958); Cierpial v. Ford Motor Co., 16 N.J. 561 (1954), reversing 31 N.J. Super. 489 (App. Div. 1954).
It is well settled that a petitioner need not actually be engaged in her employment at the time of her injury to be compensated. See, e.g., Piazza v. Prince's Farm, 86 N.J. Super. 100 (App. Div. 1965); Cavalcante v. Lockheed Electronics Co., 85 N.J. Super. 320 (Cty. Ct. 1964), affirmed 90 N.J. Super. 243 (App. Div. 1966). It is equally well settled that the accident arises out of the employment if it is result of a risk reasonably incidental to the employment. McKenzie v. Brixite Mfg. Co., 34 N.J. 1 (1961); Rice v. Pharmaceuticals, Inc., 65 N.J. Super. 579 (App. Div. 1961). Within the framework of these basic principles of law it would seem clear that the risk of falling while walking from jury duty, assertedly to resume her usual clerical duties, was not a risk reasonably incidental to her employment with the State. The State should not be held responsible for injuries sustained while petitioner was performing a public duty for the good of the community at large. Certainly, it can be said her *463 employer received an incidental benefit, but so also was it a salutary gain for the judicial system of the State and for the county and community, and even for every citizen of this State. Any incidental benefit that may have been received was not such as to be limited to the State of New Jersey alone as her usual employer.
It is the opinion of this court that the petitioner did not suffer an accident and injuries which arose out of and in the course of her employment with the State of New Jersey, within the provisions of N.J.S.A. 34:15-43, and therefore the petition is hereby dismissed as to the State.

II
The second question raised by this appeal and trial de novo is whether, for the purposes of workmen's compensation, petitioner was an employee of the county which summoned her for jury duty. As hereinbefore mentioned, the question of whether a juror is an employee is a novel one in the State of New Jersey. This same question has been dealt with in a few sister states on a rather limited basis. With the exception of Industrial Commission of Ohio v. Rogers, 122 Ohio 134, 171 N.E. 35, 70 A.L.R. 1244 (Sup. Ct. 1930), which holds that a juror injured by falling while in the course of performing the duties of a juror is in the service of the county under an appointment of hire, and is entitled to be compensated under the state workmen's compensation statute, it has been held uniformly that a juror is not an employee of the county which summons him for duty. See Board of Com'rs of Eagle County v. Evans, 99 Colo. 83, 60 P.2d 225 (Sup. Ct. 1936); Seward v. County of Bernalillo, 61 N.M. 52, 294 P.2d 625 (Sup. Ct. 1956); Jochen v. County of Saginaw, 363 Mich. 648, 110 N.W.2d 780 (Sup. Ct. 1961), and Hicks v. Guilford County, 267 N.C. 364, 148 S.E.2d 240 (Sup. Ct. 1966).
In Board of Com'rs of Eagle County v. Evans, supra, the court held that no contract of employment arose from the *464 status of juror and stated the basis for the decision as follows:
"Jurors are selected, summoned, and serve pursuant to statute. * * * Their compensation is fixed by like authority (citations omitted). * * * The county does not negotiate with a citizen for his services as a juror, nor does the citizen apply to the county for such preferment. When a citizen is summoned to jury service he responds to process running in the name of the people, which imports such dignity that it commands respect, and is of such force that none disobeys. By the majesty of the law therefore, not by contract, he becomes a juror. Neither he nor the county is consulted as to whether, or when, he shall serve, or as to duration of his service or the compensation therefor. A juror, it seems proper to say, has to do with the gravest affairs of men, and what he determines as to matters submitted to him is not subject to control whatsoever. The legislative branch of the government has not said that a juror is an employee of the county, and it does not lie with the judicial branch to belittle the functions of his great office by so declaring. Indeed we are not at liberty to extend the statutory provisions. Colorado F. & I. Co. v. Industrial Commission, 88 Colo. 573, 298 P. 955. Jury Service, as has been said, `is a temporary employment from which the person is relieved as soon as the duty is performed. The duty to serve as a juryman is an obligation to the community in which he resides, and his consent to serve is not essential. His position as a juryman is not the result of contract.' The Queen v. Lui Self, 8 Hawaii 434. * * * We have given great attention to Industrial Commission of Ohio v. Rogers, 122 Ohio St. 134, 171 N.E. 35, 70 A.L.R. 1244, 1248, cited by counsel for defendant in error. That is the only case in which we are advised where a juror has sought an award of compensation benefits, and there the juror prevailed. The learned court of that pronouncement is to be greatly respected, but we are not persuaded to its view of the office of a juror, or as to the genesis of his selection. In no conceivable sense, we think, is a juror engaged by or for the county by appointment, or contract of hire, or at all. He functions as part of the judicial machinery, and is as indispensable to its ongoing as is the judge of the court where he serves." (60 P.2d, at pp. 226, 227)
The court in Seward v. County of Bernalillo, supra, gave even less consideration to the question of compensating a juror. In an 11-line opinion the court denied compensation on the basis of the Eagle decision without discussing the arguments presented by counsel.
In Hicks v. Guilford County, supra, the North Carolina court adopted the Eagle rationale and held against compensating *465 a juror. The court stressed that the juror may not be directed as to how he is to conduct his duties. In its opinion the court said:
"A juror is not appointed by the county commissioners or by any county official. His name is drawn from the box without regard to relative qualifications of those whose names are rightly in the box (citation omitted). He is then subject to peremptory challenge, as well as to challenge for cause by either party to litigation. His services, if he is accepted and empaneled to try the issues in an action are not obtained or defined by contract of hire between him and the county. There are no negotiations between him and the county, express or implied, for those services. He is not a public officer, an independent contractor or an employee. He is a juror. `He is neither appointed nor elected to his position of duty.' Territory v. Hopt, 3 Utah 396, 4 P. 250." (148 S.E.2d, at p. 244)
In Jochen v. County of Saginaw, supra, the Michigan Supreme Court, in a split decision, held that the petitioner was barred from recovery under the state workmen's compensation statute because the injury occurred before she was accepted as qualified for service as a petit juror. The majority of the court refused to decide the broader question involved in Rogers and Evans within the facts of this case. In a separate opinion Justice Carr, Justices Dithmers and Kelly concurring, was of the opinion that the ordinary incidents pertaining to an employer-employee relationship were not present in this case. Michigan has a workmen's compensation statute similar to N.J.S.A. 34:15-43 wherein it classifies and specifically enumerates the persons covered by workmen's compensation. Justice Carr held that if the legislature intended that coverage be afforded jurors injured in the performance of their duties it would have included them in the statute.
The method and manner of selecting jurors has been set forth by the Legislature of the State of New Jersey. Jurors are told when and where to appear for duty (N.J.S. 2A:72-5), and while they are told they are expected to serve for a stated period, usually two weeks in duration, they may be ordered to appear for a longer period (N.J.S. 2A:74-11). Jurors are compensated at a stated rate which may be reduced *466 by the county freeholders (N.J.S. 2A:1-1) and, in addition to a per diem rate, the jurors are compensated for travel (N.J.S. 2A:1-2, 3). Furthermore, courts may prolong jury duty, or terminate it at any time in the proper exercise of judicial discretion. The hours of service are also set and controlled by the courts, and a county judge, although he is paid by the county, certainly cannot be considered an employee of that county.
Petitioner contends the "control test" is the determining factor to be considered and that an application of this test leads to the conclusion that a juror is an "employee" of the county within the meaning of the Workmen's Compensation Act. Among the factors considered important are the power of the employer to specify the manner of doing the job, the power to terminate the employment, and the payment of an emolument in the nature of wages.
This court does not agree with petitioner's contention that the "control test" is the determining factor to be considered within the facts of this case. The services of a juror are not the result of contractual negotiations, either express or implied, between the individual juror and the county which summons her to duty. He functions as part of our judicial system and plays an indispensable part in its overall administration of justice. In the absence of any contractual relationship, undue emphasis should not be placed upon the "control test" of which petitioner speaks. Even it if be conceded that the county exercises some degree of control over the services of a juror, this court is not persuaded that such control is restricted to the county alone. A juror is subject to the control of this court in its proper exercise of judicial discretion. With all due respect to the learned opinion of the court in the Rogers case, supra, this court adopts the rationale of the Evans case, supra, and its progeny, ever mindful of the underlying policies which play an important role in the construction of our State Workmen's Compensation Act.
For the reasons hereinabove stated, it is the judgment of this court that the petitioner was not an employee of the *467 County of Mercer and therefore did not sustain an injury which arose out of and during the course of her employment as required by law.
Counsel will submit an order in conformity with this opinion.